Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE


In Re CARRIER IQ, INC.          )
Consumer Privacy Litigation.    )
_____ )   NO. C12-md-2330 EMC
                                )
This proceeding relates to      )
all member and related cases.   )
                                )   San Francisco, California
_____ )   Tuesday, April 15, 2014


**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING**
**OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:            Pearson, Simon & Warshaw, LLP
                           44 Montgomery Street, Suite 1200
                           San Francisco, California  94104
                    BY:    **BRUCE L. SIMON, ESQ.**
                           **WILLIAM J. NEWSOM, ESQ.**

For Defendant:             Fenwick & West
(Carrier IQ, Inc.)         Silicon Valley Center
                           801 California Street
                           Mountain View, California  94041
                    BY:    **RODGER R. COLE, ESQ.**
                           **TYLER G. NEWBY, ESQ.**

For Defendant:             Winston & Strawn, LLP
(Motorola Mobility)        101 California Street
                           San Francisco, California  94111
                    BY:    **SETH WEISBURST, ESQ.**


(Appearances continued on following page.)


Transcribed by:            Leo T. Mankiewicz, Transcriber
                           leomank@gmail.com
                           (415) 722-7045

**<u>APPEARANCES</u>**:  (cont.)

For Defendant:          H.C. Park & Associates, LLC
(Pantech Wireless)      1894 Preston White Drive
                        Reston, Virginia  20191
                 BY:  **OLUWASEN AJAYI, ESQ.**

For Defendant:          Skadden, Arps, Slate, Meagher & Flom
(Samsung)               300 South Grand Avenue, Suite 3400
                        Los Angeles, California  90071
                 BY:  **SHERYL LEUNG, ESQ.**

For Defendant:          Greenberg Traurig, LLP
(LG USA)                1900 University Avenue, 5th floor
                        East Palo Alto, California  94303
                 BY:  **IAN C. BALLON, ESQ.**

For Defendant:          Covington & Burling
(Huawei Devices)        One Front Street
                        San Francisco, California  94111
                 BY:  **SIMON J. FRANKEL, ESQ.**  (by telephone)

For Defendant:          Munger, Tolles & Olson
(HTC America, Inc.)     560 Mission Street, 27th floor
                        San Francisco, California  94105-2907
                 BY:  **BRYAN H. HECKENLIVELY, ESQ.**

                        ---o0o---

1    <u>Tuesday, April 15, 2014</u>.

2            (Transcriber's Note:  Where counsel have failed to

3       identify themselves before speaking during the colloquy,

4           speaker attributions are based on BEST GUESS.)

5                                                    <u>10:35 a.m.</u>

6                       P R O C E E D I N G S

7            **THE CLERK:**  Calling case C12-2330, In re: Carrier

8    IQ.  Counsel, please come to the podium and state your name for

9    the record.

10           Mr. Frankel, please go ahead and say your name for

11   the record.

12           **MR. FRANKEL:**  Good morning, your Honor.  Simon

13   Frankel of Covington & Burling, for defendant Huawei.

14           **THE COURT:**  All right, thank you, Mr. Frankel.

15           **MR. SIMON:**  Good morning, your Honor.  Bruce Simon

16   on behalf of plaintiffs.  I have Mr. Newsom from my office with

17   me, as well.

18           **THE COURT:**  All right, good morning.

19           **MR. COLE:**  Good morning, your Honor.  Rodger Cole of

20   Fenwick & West for Carrier IQ.

21           **MR. NEWBY:**  Tyler Newby of Fenwick & West, also for

22   Carrier IQ.

23           **THE COURT:**  All right, good morning.

24           **MR. BALLON:**  Ian Ballon, Greenberg Traurig, for LG

25   Electronics MobileComm, U.S.A.

1      **MR. HECKENLIVELY:**  Good morning, your Honor.  Brian

2 Heckenlively from Munger, Tolles & Olson for HTC America.

3      **MS. LEUNG:**  Good morning, your Honor.  Cheryl Leung

4 from Skadden Arps for Samsung Telecommunications America.

5      **MR. AJAYI:**  Good morning, your Honor.  Oluwasen

6 Ajayi from H.C. Park & Associates for Pantech Wireless.

7      **MR. WEISBURST:**  Good morning.  Seth Weisburst from

8 Winston & Strawn for Defendant Motorola Mobility, LLC.

9      **THE COURT:**  All right.  Okay, just a reminder,

10 counsel, since we don't have a court reporter, but this is on

11 our digital recording system, you need to state your name,

12 given the number of counsel that we have, before speaking.

13      So let me ask, I didn't realize that there is an

14 issue of service on some of the defendant entities?  What's

15 going on with that?

16      **MR. SIMON:**  Well, we kind of put that off while we

17 did the motion to compel, based, in part, on a discussion that

18 we had that they may accept service, and that discussion is

19 still ongoing, but we've had no commitment.

20      There's three companies, HTC Corp., which is a

21 Taiwanese parent company of one of the entities in the case,

22 LG Electronics, which is the South Korean parent company of one

23 of the entities in the case, and Samsung Electronics

24 Corporation, which is also a South Korean parent of one of the

25 companies in the case.

1          I will say my experience has been, in some of the

2     major cases that we've had, including multiple cases with LG

3     and Samsung, that they have accepted service and have appeared,

4     so that, you know, all motions could be heard on a simultaneous

5     track, but in certain instances where that didn't happen, your

6     Honor, we went forward and did motions to dismiss as to the

7     entities that were here, and a couple of judges have issued

8     orders that to the extent they get served and brought in, then

9     those orders will apply unless there are individual

10    circumstances that are raised -- that raise different issues.

11         However, if they don't accept service, our best

12    estimate is is that since the Taiwanese HTC entity is not under

13    the Hague, you have to proceed by letters rogatory and it can

14    take up to six months.  You have to get translations and go

15    through a bunch of procedures which I know the Court is

16    familiar with.

17         LG and Samsung are under the Hague, in South Korea,

18    and it's about a three-month process; easier, but nonetheless,

19    you still have to go through translating complaints and doing a

20    lot of things.  It's not inexpensive.  It can be, you know, 10

21    or 20 thousand dollars just to get the translations and do

22    these things.

23         And so I guess I would encourage the defendants to

24    consider accepting service, avoiding the delay of having to go

25    through this, and move on with the merits of the case.

1        **THE COURT:**  How about on the defense side?

2        **MR. COLE:**  Your Honor, this is Rodger Cole for

3   Carrier IQ.  I'll let counsel for each of those entities

4   address that issue.

5        **THE COURT:**  Okay.

6        **MR. HECKENLIVELY:**  Your Honor, Brian Heckenlively

7   for HTC.  We're still considering whether we'll accept service,

8   and we'll advise the plaintiffs' counsel promptly once we make

9   a decision on that issue.

10       **THE COURT:**  When will the decision be made?

11       **MR. HECKENLIVELY:**  Your Honor, that's something that

12  we've been working on since your order issued last month.

13  I think that's something we can do within a few weeks.

14       **THE COURT:**  I'm just sort of curious what the

15  thinking is.  I mean, it's not like there's no personal

16  jurisdiction here.  It's not like this case is not going to go

17  forward and it's not like it's going to happen anyway.

18       So what's the problem?

19       **MR. HECKENLIVELY:**  Your Honor, I think that's just

20  an internal decision that the company is making.  I can't speak

21  specifically to the reasoning, but I know that's something on

22  which discussions are ongoing and it's something that we've

23  been discussing with plaintiffs' counsel since the cases were

24  first filed, and we just sort of put off for a while and now

25  has come back to the court.

1    **THE COURT:**  Well, let me make it clear.  This case

2    has been pending a long time, and I've put this case on a slow

3    track because you all wanted to do a massive amount of

4    discovery for a motion to compel arbitration; and I indulged

5    the parties, and this case has now been pending since 2012.

6    It's two years old and we haven't even gotten to the motions to

7    dismiss.  So I would advise your client to put the pedal to the

8    metal and let's get going.

9    **MR. HECKENLIVELY:**  Absolutely.

10    **THE COURT:**  If they don't, I'm going to proceed and

11    we'll go ahead and schedule motions, and if they don't

12    participate, they're -- of course I will give them due process,

13    but they're going to lose some opportunity.  So make that clear

14    to them, that we're moving forward.

15    **MR. HECKENLIVELY:**  That's understood, your Honor.

16    Thank you.

17    **THE COURT:**  All right?  Who's next?

18    Has there been another case where Samsung has

19    refused in this district to accept service in a major case, a

20    patent case, for instance?  Did Apple have to go through the

21    Hague Convention?  Well, you ought to send that message to your

22    client, okay?  Thank you.

23    **MR. BALLON:**  Your Honor, Ian Ballon for LG USA.

24    We're new to the case.  We have actually not had discussions

25    directly with plaintiff.  We had understood that LG USA was the

only defendant in this case, and learned in connection with the

meet-and-confer for the statement that there's also an issue --

there's a present issue.  I'd like to hear from plaintiffs'

counsel.  Perhaps we can confer after and get back in touch

with my client very quickly.

    **THE COURT:**  When was your client brought into this

case?

    **MR. BALLON:**  Our client was brought in originally,

but we substituted in as counsel about two months ago.  LG was

represented by a different --

    **THE COURT:**  Oh, yes, because I always thought LG was

here.  You're saying you've been brought in lately.

    **MR. BALLON:**  Yes.

    **MR. SIMON:**  I mean, I'd be happy to confer, I always

am, but I've pretty much said what our position is and I would

say the same thing in our meet-and-confer.  So I am happy to

talk, but I've expressed our position about the expense and

inconvenience of having to go through service.

    **THE COURT:**  Okay.  All right, but what I've said to

the other defendants applies equally to LG, okay?

    Well, so then the next step, the next question is,

assuming we resolve the service issues sooner rather than

later, is where we go from here.

    I take it defendants, maybe some or all, are going

to file a notice of appeal.  What's the timing of that?

1          **MR. COLE:**  Your Honor, we have to file the notice of

2     appeal by the end of the month -- by this April 28th, right?

3     That's correct, your Honor.

4          **THE COURT:**  Okay, and will you be then moving

5     simultaneously for a stay pending appeal --

6          **MR. COLE:**  Yes, we will, your Honor.

7          **THE COURT:**  -- that date?  So by no later than

8     May 28th, we'll have a motion for stay before this court,

9     correct?

10          **MR. SIMON:**  No, your Honor.  I would say, you know,

11     this implicates the whole schedule, because you start piling

12     these dates on top of each other, and I frankly think the

13     scheduling, given even the plaintiffs' schedule, is too

14     elongated.  I think their motion to stay could be brought at

15     the same time as their appeal, and we could actually have

16     everything heard by the first week of June, and that seems to

17     be the way to go.  I mean --

18          **THE COURT:**  I thought that's what I just said, that

19     they would file their motion --

20          **MR. SIMON:**  Oh, okay, I'm sorry.  Maybe I misheard

21     you.  You said May 28th.  It's --

22          **THE COURT:**  Oh, I meant --

23          **MR. SIMON:**  -- April 28th.

24          **THE COURT:**  April, I'm sorry.  I meant the same time

25     they file their notice of appeal, they file their notice of

1    motion, and I don't see any reason why this would take any more

2    than the normal notice period.  This is not --

3            **MR. SIMON:**  Normal notice period and normal page

4    limits, from our perspective.

5            **MR. COLE:**  Your Honor, may I make two comments on

6    this?

7            **THE COURT:**  Yes.

8            **MR. COLE:**  First of all, I genuinely understand your

9    Honor's frustration with this case has been pending for two

10   years, but if I may, let's take a step back.

11           We've -- the case was transferred to this court in

12   April of 2012.  The plaintiffs filed their consolidated

13   complaint in August.  We filed our motion to compel arbitration

14   in November of 2012.  Plaintiffs asked for discovery on the

15   arbitration.  We resisted that very strongly, arguing to this

16   Court that the only thing that the Court needed to consider

17   were the allegations of the Complaint and the contracts at

18   issue.

19           Plaintiffs pushed discovery, and for 15 months took

20   extensive discovery from the parties and third parties, and

21   then in their opposition to the motion to compel, cited one

22   piece of evidence, in a footnote, that was revealed in the

23   course of that 15 months of discovery.

24           So I just wanted to make sure that the Court's --

25           **THE COURT:**  I'm not casting any blame on the

1    process.  What I'm saying is that on things like accepting

2    service of process, there's no reason that that should incur

3    another six-month delay.

4              Now, I know you've talked about a fairly elongated

5    schedule with respect to the motions to dismiss, and we can

6    talk about that, but I'm just saying, sort of, we're going to

7    move things along at this point.

8              **MR. COLE:**  All for it, your Honor.

9              **MR. SIMON:**  And just for the record, I mean, I won't

10   go through it, but we disagree with Mr. Cole's one-sided

11   characterization of the time that went by.

12             **THE COURT:**  Well, it is what it is at this point and

13   I'm where I am at this point and we're going to move this

14   along.  So that's why I want to set some clear dates.  Your

15   notice of appeal is due no later than the 28th.  I expect you

16   to file your motion for stay at that -- at the same time you

17   file your notice of appeal.

18             **MR. COLE:**  Up till May 15th to file that, and let me

19   just say for the very simple reason, all due respect to my

20   esteemed colleagues, having six or seven different clients

21   commenting on a motion is something that takes, I've learned in

22   this case, takes a lot longer than anyone would expect.  So if

23   we could just have until May 15th to file the motion, I would

24   appreciate it.  It's two additional weeks.

25             **MR. SIMON:**  First of all, maybe we should get a

1    handle on a couple things, like, is it going to be one motion

2    within the page limits?  It should be.  Their basis for the

3    stay is completely the same as to all defendants.

4              Secondly, as we know from the law, it's completely

5    discretionary with the Court to grant the stay or not at this

6    point in time and, you know, given the factors that are

7    involved, this should be a very quick briefing schedule.  Your

8    Honor knows what it means to grant a stay, knows what the law

9    is on it.  So I see no need for any further time needed.

10             **MR. COLE:**  Your Honor, we agree one motion -- one

11   brief and one motion to stay, normal briefing schedule, normal

12   page limits.  We would agree with all that.  I just -- we

13   literally -- the final decision -- the final defendant decided

14   yesterday to join the notice of appeal, so we have not had an

15   opportunity to start the motion to stay, and I'm just asking

16   your Honor for two additional weeks because of the number of

17   parties involved.

18             **THE COURT:**  Well, the problem is, because you're

19   also suggesting then the -- that that affects what goes on down

20   the line with respect to a motion to dismiss, and that doesn't

21   start -- the clock doesn't start until I rule on the motion for

22   stay, and so everything -- and then you're asking for a rather

23   elongated schedule on the motion to dismiss, and I do want to

24   hear why you need triple or quadruple the normal amount of time

25   but, you know, by the time we finally get to the motion to

1    dismiss, you know, we're going to get almost towards the end of

2    year, and that's just on a motion to dismiss.  We haven't

3    talked about anything else in this case, and then we've got

4    this question about this second amended complaint and how

5    that's going to play into it.

6              And so with respect to this first question, I guess

7    I don't understand what's -- everybody's going to make

8    essentially the same arguments.  I don't see multiple arguments

9    from -- maybe I'm missing something -- multiple defendants.

10   This is not rocket science.  The standards are fairly clear.

11   So I don't see -- and you have plenty of resources here.  This

12   is a well staffed case.  And so I really don't see the need for

13   an extension.

14             **MR. COLE:**  Your Honor, how about at least one

15   additional week?  You're giving us 13 days?  We just decided --

16   the last defendant just decided yesterday.  Could we have till

17   May 7th?

18             **MR. SIMON:**  I don't have an objection to that, and

19   I think we're going to end up with a schedule that's much

20   shorter on the motions to dismiss than we propose, so I think

21   we'll make it.

22             **THE COURT:**  All right, May 7th for the motion, and

23   then the normal 35 briefing schedule, and that will be heard --

24   Betty, 35? -- June 12th at 1:30, hearing on the motion for

25   stay.

1          And then, now let's talk about the motion to

2     dismiss, but then I'm hearing you want to file a Second Amended

3     Complaint?  Oh, following defendant's motion to dismiss.

4          **MR. SIMON:**  Right.

5          **THE COURT:**  Is that what you're...?

6          **MR. SIMON:**  I think that -- I went through this all

7     in my mind, and just indulge me for a second, I've played it

8     all out, because I think very simplistically about these

9     things, because I like to organize my life, as does the Court

10     and defense counsel.

11          So if we played it out the way it's currently laid

12     out, with the decision on the motion to stay triggering the

13     motions to dismiss, basically I've got -- you know, and

14     I didn't account for the dates we set in the extra week, but

15     I've basically got us in early November before the motion to

16     dismiss briefing is done, and -- because 150 days, according to

17     the defendants' proposal -- and we even proposed too long.

18     I mean, I would consider even withdrawing our proposal.

19          And as far as the amendment, I think, you know, it's

20     the first go-round on motions to dismiss.  The things that we

21     would amend to do would, I don't think, necessarily make that

22     much difference on the motions to dismiss, although we'll take

23     a look at them, and if those motions to dismiss come in and

24     they raise issues that we think we can amend because we have

25     facts from the other discovery or whatever, we would ask the

1   Court permission perhaps to do that, but I would not put in a

2   date first us to amend before they bring their motion to

3   dismiss.

4           I think one thing that would be very helpful here

5   is -- again, this is not rocket science, and we've, like,

6   briefed a lot of these issues in the context of the motion to

7   compel arbitration.  I know the standard is different and

8   everything else, but we've really scrutinized what the

9   Complaint says and what it doesn't say, and your Honor's made

10  comments about what you understand and things that might be

11  ambiguous and that type of thing, and I'm wondering what

12  they're going to move on, whether we're going to get one

13  motion, you know, five motions, and it seems to me we can

14  expedite that schedule and perhaps maybe defendants, if you set

15  a date by which they let you know what their basis for their

16  motions to dismiss are going to be, we'll know whether we're

17  going to have more issues or less issues prior to the time that

18  they're actually filed.

19          **THE COURT:**  Have you met and conferred at all about

20  what the subject and the grounds for the motions are and what

21  might be obviated by process of an amendment?

22          **MR. SIMON:**  Only superficially, and we -- we would

23  be happy to do that.

24          **THE COURT:**  And that makes some sense.

25          **MR. COLE:**  Your Honor, we've had asked -- the

1    plaintiffs have stated unequivocally that they intend to file

2    an amended complaint.  We've asked them to show us a draft of

3    that amended complaint and a redline comparing to what it is

4    now, so we can see whether or not we'll stipulate to the

5    amended complaint.

6           Plaintiffs bear the burden of stating their claim.

7    It seems to me if they intend to file an amended complaint,

8    they should do it, and then we should file the motions to

9    dismiss, if we have one.

10           **THE COURT:**  Well, you know, probably this is

11    chicken-or-egg.  He wants to see what your grounds are so he

12    can see what he may have to amend, and you want to see what

13    he's going to amend anyway, so you know what the grounds are --

14           **MR. SIMON:**  No, no.  I don't want to hide the ball

15    at all.  I mean, we -- some of the possible areas of amendment

16    would be the fact that we know, you know, that HTC, you know,

17    had an FTC investigation and there's certain transmittal of

18    consumer content through some of their systems, including

19    something called Tel HTC, which is a tool that they have.

20           So there are areas of possible amendment.  I don't

21    think, frankly, although I don't know what their motions to

22    dismiss are going to be, that we necessarily have something we

23    would amend that would alleviate their motions to dismiss.

24           **THE COURT:**  Well, but it may shape certain things.

25    The last thing I want to do is, you have some stuff now that

1  you know about that you could amend now, but you think may not

2  be that relevant.  They bring their motion, ends up it is

3  relevant, and then he's, okay, let's go back and now I'm going

4  to amend it, and I understand that we go through yet another

5  round, and every time we do this, we're -- you know, that's

6  why -- it seems to me that, why not meet and confer and try to

7  narrow....

8         There's clearly going to be some allegations are

9  going to be in there that you're going to contest and I'm sure

10  you're not going to just admit to the complaint, I assume, but

11  why not meet and confer, you reveal what you have in mind

12  currently in terms of things you may want to add to the amended

13  complaint, second amended complaint, you disclose at least the

14  bases that you're going to bring, and maybe apparent which are

15  the key issues that we can tee up rather than going through

16  iterations of this thing.

17         **MR. COLE:**  All for that, your Honor, and once we do

18  that, it makes sense that the amended complaint should be

19  filed, and then we file the motion to dismiss.  Otherwise --

20         **THE COURT:**  I tend to agree with that.  I'd rather

21  have your best shot now and their best shot, but only after

22  there's been refining, not sort of guessing and throwing arrows

23  in the dark.

24         **MR. SIMON:**  Right, and I just want to say, we may go

25  through that discussion and depending on what they say they're

1  going to move to dismiss on, we may sit pat on our Complaint.

2         **THE COURT:** And that's fine. I mean, you know, you

3  want to sit on it, that's fine. At least it's an informed

4  decision at that point, and not --

5         **MR. SIMON:** We're happy to do that, and we're happy

6  to do that on an abbreviated schedule, where we do that over

7  the next couple of weeks. So if you give us a deadline by

8  which to complete the meet-and-confer and report to you --

9         **THE COURT:** Well, let's do that. Maybe we should

10  reconvene here and let me know what you all come up with, and

11  then we can set the schedule at that point, whether you're

12  going to file a new complaint and then key off of that, or

13  whether you're ready to now move on the schedule, and then I'd

14  like you to also meet and confer -- frankly, no matter how

15  complicated things are, I don't see the justification for a

16  hundred-and-something day, 150-day, you know, schedule. That's

17  like four times the normal amount.

18         I know this is complicated and I assume this

19  probably has to do with all the different state laws that are

20  involved, and is that part of the complexity of this, as well

21  as the novelty of some of the federal issues?

22         **MR. COLE:** Just take note that, Mr. Simon's desire

23  to get the case moving. Their preferred schedule is only 15

24  days shorter than ours, and it was shorter the last time --

25         **THE COURT:** I didn't like their schedule, either.

1      **MR. SIMON:**  Yeah, and I don't like our schedule,

2    either, and frankly, had I looked at it more closely, and...

3      **THE COURT:**  Okay.

4      **MR. COLE:**  One other point, your Honor, is that as

5    far as the meeting-and-conferring goes, happy to come back to

6    the Court and report on that.  Of course, we think that that

7    should happen after the motion to stay is decided.  We will

8    meet and confer in the interim, but as far as a report back to

9    the Court....

10      **THE COURT:**  Well, let's do it this way:  Let's meet

11    and confer, with or without -- I mean, there's no reason why

12    you can't meet and confer.  We can then -- question is maybe,

13    you know, we could just use the hearing on that as a further

14    status, and the problem is that's almost two months from now,

15    and I'd rather know what you're doing before then.

16      **MR. SIMON:**  About, I think -- did you just set

17    May 7th for filing your motion?

18      **THE COURT:**  That's when the filing of the motion is.

19      **MR. SIMON:**  We could either come back that day or

20    the following week, the 14th, and report to you, and have our

21    meet-and-confer done in advance of that.

22      **THE COURT:**  Let's have a short status on the 14th

23    and let me know, with your meet-and-confer --

24      **MR. SIMON:**  May 15th.  What time would that be?

25    Okay.

1    **THE COURT:**  Confer about the second amended

2    complaint and the motion to dismiss, and see if you can focus

3    in and alleviate multiple iterations of, dismiss, amended

4    complaint, dismiss, another amended complaint.  That's what

5    I want to avoid.

6         **MR. COLE:**  That would be fine, your Honor.

7         **THE COURT:**  Be able to decide all the issues in

8    one...  Then at that point, I'd like you to also, as part of

9    meet-and-confer, to see if you can come up with a more

10   reasonable spacing in terms of the sequence of things.  I mean,

11   frankly, even if we doubled the normal time that people get,

12   that at least it's done within 70 days, not 150 days.

13        **MR. SIMON:**  Well, I'm going to take responsibility

14   for that, because I presumed that it would be shorter, and then

15   when I read the case management statement, I was a little

16   surprised by how long it is.  So I would have proposed shorter,

17   to be honest with you, but...

18        **THE COURT:**  Well, I'd like to you meet and confer.

19   I mean, obviously, this is an extraordinary case in the sense

20   that the amount of law involved and the substantive law, and so

21   wholly apart from the complex nature of the factual

22   allegations, this is not a (inaudible) case.  So I appreciate,

23   and you know, the Court will want some time, too, to look at

24   this, not the normal period.  On the other hand, it needs to be

25   reasonable.  So why don't you meet and confer on that, as well,

1    and briefing schedule.

2            And so I guess in terms of ADR, that's -- it's a bit

3    premature, but I do want to put that on the table soon.

4    Perhaps when we -- certainly no later than the hearing on the

5    motion for stay pending appeal, I want to get a good sense of

6    what your plan is and your thinking in terms of ADR and exactly

7    what it is, what the discovery plan is pre-ADR.  I mean, I got

8    some hint of that here, and I don't know -- again, you met and

9    conferred, but if this case is not stayed and it proceeds, I do

10   want to phase discovery in the sense of focusing in, at least

11   initially in phase one, on the things that are needed in order

12   to approach meaningfully the first ADR opportunity, and not

13   fire all your guns at once.  So if you can come up, again, with

14   a discovery plan.

15           So I will hold a status on the 12th of June, as

16   well, and we'll talk about ADR and discovery -- phased

17   discovery, focusing on ADR.  So it's -- you can never start

18   that discussion too early, as far as I'm concerned.

19           All right?

20           **MR. COLE:**  Fine, your Honor.

21           **THE COURT:**  All right, so we've got a plan.  We'll

22   see you on the 15th -- what time is that, Betty? -- 10:30, talk

23   about where we're headed with respect to the motions to dismiss

24   and any second amended complaint, as well as the briefing

25   schedule, and then on the sixth -- June 12th, we'll hear the

1    motion to stay pending appeal, and have a further status on

2    this, too --

3              **MR. SIMON:**  That is fine, your Honor.

4              **THE COURT:**  -- focused particularly on ADR and

5    discovery, ADR-related discovery.

6              **MR. SIMON:**  And as to the unserved defendants, may

7    I request that the Court ask that they --

8              **THE COURT:**  I'd like a decision date.

9              **MR. SIMON:**  Yeah.

10             **THE COURT:**  Within two weeks should be enough time

11   to make that.  I don't see why there's any more complication to

12   that.  So that would be...

13             Now, I'm going to assume that there's not a problem.

14   If there is a problem, then I want a joint letter explaining

15   what the situation then is on service, and what needs to be

16   done in that regard, because that may affect the rest of the

17   scheduling in this case.

18             But if I don't hear anything, I'm going to assume

19   that service has been accepted by these three defendants and

20   we're going to get to the merits of this case, or stay or

21   whatever, whatever we do, but we're going to not spend more

22   time on just service issues.  Okay?

23             **MR. COLE:**  Thank you, your Honor.

24             **THE COURT:**  All right, thank you.

25             **MR. COLE:**  Thank you very much, your Honor.

1          **THE COURT:**  Thank you.

2          **MR. FRANKEL:**  Thank you.

3                                                    <u>11:02 a.m.</u>

4                           ---o0o---

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3               **CERTIFICATE OF TRANSCRIBER**

4

5          I, Leo Mankiewicz, certify that the foregoing is a

6     true and correct transcript, to the best of my ability, of the

7     above pages of the official electronic sound recording provided

8     to me by the U.S. District Court, Northern District of

9     California, of the proceedings taken on the date and time

10    previously stated in the above matter.

11         I further certify that I am neither counsel for,

12    related to, nor employed by any of the parties to the action in

13    which this hearing was taken; and, further, that I am not

14    financially nor otherwise interested in the outcome of the

15    action.

16

17    _____    4/24/2014

18         Signature of Transcriber          Date

19

20

21

22

23

24

25